UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TECHNOLOGY CAPITAL, LLC, et al.,    ) | |
| ) | |
|        *Plaintiffs*    ) | |
| ) | |
| *v.*    ) | Docket No. 06-51-P-H |
| ) | |
| QUALTECH NETWORKS, INC., et al.,    ) | |
| ) | |
|        *Defendants/Third-Party*    ) | |
|        *Plaintiffs*    ) | |
| ) | |
| *v.*    ) | |
| ) | |
| JOM, INC., et al.,    ) | |
| ) | |
|        *Third Party Defendants*    ) | |

### *RECOMMENDED DECISION ON MOTIONS TO DISMISS*

Defendants Jarden Corporation ("Jarden"), Bicycle Holding, Inc. ("Bicycle"), United States Playing Card Company ("USPC") and International Playing Card Company, Ltd. ("IPCC") move to dismiss the claims against them based on the assertion that this court lacks personal jurisdiction over them, Defendants[] Jarden Corporation, Bicycle Holding, Inc., The United States Playing Card Company and International Playing Card Company Ltd. Motion to Dismiss for Lack of Personal Jurisdiction, etc. ("Rule 12(b)(2) Motion") (Docket No. 63),[1] and based on the assertion that the

---

[1] The moving defendants also assert that "service of process is not effective under the Maine Long Arm Statute and Constitution," Rule 12(b)(2) Motion at 1, that "there is no jurisdiction over USPC and process is insufficient," *id.* at 20, and that "it would offend the bounds of due process to exercise jurisdiction over IPCC, and process is insufficient.," *id.* There is no further mention of service of process in the motion to dismiss. These conclusory statements are insufficient to present a claim of insufficient service of process and I will accordingly not consider the question further. The motion also states that it is brought pursuant to Fed. R. Civ. P. 12(b)(3), which is the defense of improper venue. My conclusion with respect to the claim of lack of personal jurisdiction makes it unnecessary to
(*continued on next page*)

1

amended complaint fails to state a claim against them on which relief may be granted, Motion to Dismiss of Defendants Jarden Corporation, Bicycle Holding, Inc., The United States Playing Card Company and International Playing Card Company, etc. ("Rule 12(b)(6) Motion") (Docket No. 75). I recommend that the court grant the Rule 12(b)(2) motion, thereby rendering moot the Rule 12(b)(6) motion.

## I. The Rule 12(b)(2) Motion

### A. Applicable Legal Standard

A motion alleging lack of personal jurisdiction is governed by Fed. R. Civ. P. 12(b)(2). Such a motion raises the question whether a defendant has "purposefully established minimum contacts in the forum State." *Hancock v. Delta Air Lines, Inc.*, 793 F. Supp. 366, 367 (D. Me. 1992) (citation and internal quotation marks omitted). The plaintiff bears the burden of establishing jurisdiction; however, where (as here) the court rules on a Rule 12(b)(2) motion without holding an evidentiary hearing, a *prima facie* showing suffices. *Archibald v. Archibald*, 826 F. Supp. 26, 28 (D. Me. 1993). Such a showing requires more than mere reference to unsupported allegations in the plaintiff's pleadings. *Boit v. Gar-Tec Prods., Inc.* 967 F.2d 671, 675 (1st Cir. 1992). However, for purposes of considering a Rule 12(b)(2) motion the court will accept properly supported proffers of evidence as true. *Id*.

Because this is a diversity case, the court's authority to exercise personal jurisdiction over a non-resident defendant is limited by the State of Maine's long-arm statute. *See American Express Int'l, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir. 1989). As Maine's long-arm statute permits the exercise of jurisdiction over non-resident defendants to the "fullest extent permitted by the

---

consider the question of venue.

due process clause of the United States Constitution, 14th Amendment," 14 M.R.S.A. § 704-A(1), the inquiry focuses on whether the assumption of jurisdiction would violate due process.

Due process requires that each defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). Minimum contacts are determined by whether the defendant "purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

To establish personal jurisdiction over a non-resident defendant, the plaintiff must demonstrate that the defendant is subject either to "general" jurisdiction or "specific" jurisdiction. "[A] defendant who has maintained a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc*., 196 F.3d 284, 288 (1st Cir. 1999) (citations omitted). Absent general jurisdiction, this court may still assume jurisdiction if the claim "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Id*.

The Maine Law Court has determined that

> before exercising its jurisdiction over an out-of-state defendant, the court must conclude that (1) Maine has a legitimate interest in the subject matter of this action; (2) the defendant, by its conduct, should reasonably have anticipated litigation in Maine; and (3) exercise of jurisdiction by Maine's courts would comport with traditional notions of fair play and substantial justice.

*Frazier v. BankAmerica Int'l*, 593 A.2d 661. 662 (Me. 1991). Once the plaintiff demonstrates that Maine has a legitimate interest in the controversy and that the requisite minimum contacts exist such

that the defendant should reasonably expect litigation in this state, the burden shifts to the defendant to prove that the exercise of jurisdiction would not comport with fair play and substantial justice.

### B. Factual Background

The amended complaint includes the following relevant factual assertions.

Plaintiff Technology Capital LLC ("Technology Capital") is a Maine limited liability company with its principal place of business in Auburn, Maine. Plaintiffs' Amended Complaint, etc. ("Amended Complaint") (Docket No. 46) ¶ 5.[2] Plaintiff William K. Kendall is trustee of The Kendall 1987 Revocable Trust, a trust duly established and existing under the laws of the State of California. *Id*. ¶ 6. Defendant Jarden is a Delaware corporation with its principal place of business in Rye, New York. *Id*. ¶ 11. Defendant Bicycle is a Delaware corporation with its principal place of business in Cincinnati, Ohio. *Id*. ¶ 12. Defendant USPC is a Delaware corporation with its principal place of business in Cincinnati, Ohio. *Id*. ¶ 10. Defendant IPCC is an Ontario, Canada corporation. *Id*. ¶ 13. Jarden is the ultimate parent of Bicycle, USPC and IPCC. *Id*. ¶ 14.

On or about January 18, 2005 Qualtech entered into a contract with JOM, Inc. d//b/a Chipco International. *Id*. ¶ 15. The contract provides, *inter alia*, that "Chipco shall have the exclusive right worldwide to market" certain sensor-based gaming systems developed by Qualtech. *Id*. ¶ 17. The technology includes computer chips that can be embedded in gaming chips, as well as devices that can read information from, and write information onto, the embedded computer chips, and related integrated software that enables and controls the system. *Id*. ¶ 18. The contract also provides that while it is in effect "Qualtech agrees not to . . . solicit, initiate or consider the submission of proposals from any other third party." *Id*. ¶ 20.

---

[2] All citations are to the redacted public version of the amended complaint unless otherwise indicated.

4

On or about April 20, 2005 Chipco assigned its rights under the contract to the trust for the benefit of Technology Capital. *Id.* ¶ 22.  On or about December 7, 2005 Qualtech purported to terminate the contract on the alleged basis that Chipco had breached the contract by assigning it to a third party. *Id.* ¶ 23.  On or about January 24-25, 2006 senior executives of the plaintiffs attended the European Gaming Show in London, England and learned that Qualtech had told gaming industry suppliers that it had the right to market the technology. *Id.* 28.  They learned that Qualtech had signed a term sheet and non-disclosure agreement under which it would sell USPC the rights to distribute the technology. *Id.* ¶ 29.  The defendants have misrepresented to the public that they have the right to market the technology. *Id.* ¶ 31.

## C. Discussion

The amended complaint asserts that the moving defendants intentionally interfered with the plaintiffs' contract or contracts and intentionally procured their breach, *id.* ¶ 66 (Count VII); intentionally interfered with certain of the plaintiffs' prospective economic advantages, *id.* ¶ 72 (Count VIII); violated the Lanham Act, *id.* ¶ 76 (Count IX); engaged in false and deceptive trade practices "under applicable statutory and/or common law," *id.* ¶ 89 (Count X); misappropriated the plaintiffs' trade secrets and/or those of their predecessors in interest, *id.* ¶¶ 91-96 (Count XI); committed trade libel, defamation of title, commercial and trade disparagement and/or disparagement of title "under applicable statutory and/or common law," *id.* ¶ 101 (Count XII); committed fraud, *id.* ¶¶ 103-06 (Count XIII); committed or aided, abetted and enabled others in committing, passing off or palming off of the plaintiffs' intellectual property rights, *id.* ¶¶ 109-14 (Count XIV); engaged in unfair competition, *id.* ¶ 116 (Count XV); misappropriated the technology at issue, *id.* ¶ 120 (Count XVI); and committed false advertising, *id.* ¶¶ 123-25 (Count XVII).

The moving defendants first contend that this court does not have specific personal jurisdiction over them because

> the contract that is the subject of this action does not involve any contacts with Maine: it does not involve a Maine resident as a party or third-party beneficiary, it was not negotiated in Maine, it was not to be performed in Maine and it is not governed by Maine law. Moreover, even assuming the facts can be construed to support tortious conduct by the Defendants, none of the alleged conduct took place in Maine.

Rule 12(b)(2) Motion at 9. They cite *MUNIS, Inc. v. East Orange Bd. of Water Comm'rs*, 2002 WL 1162811 (D. Me May 31, 2002 ) at *5, for the proposition that, because their contacts with Maine were not instrumental in either the formation of the contract or in its breach, a Maine court lacks jurisdiction over them. *Id*. However, in that recommended decision, subsequently adopted by Judge Carter of this court, *MUNIS, Inc. v. East Orange Bd. of Water Comm'rs*, 2002 WL 1461850 (D. Me. July 8, 2002), the claim asserted against the moving defendants was breach of contract, 2002 WL 1162811 at *1, while here the claims asserted against the moving defendants do not involve breach of the contract at issue but rather interference with the contract and numerous other torts. *MUNIS* dealt with the analysis of "relatedness" for purposes of specific jurisdiction "with respect to contract causes of action." *Id*. at *5. That analysis is not relevant to the claims asserted here.

The moving defendants go on to contend that "harm to a resident, without further contacts in the forum, is insufficient to establish specific jurisdiction." Rule 12(b)(2) Motion at 11. The plaintiffs respond that "caus[ing] the consequences of a tortious act to occur within" Maine is sufficient under 14 M.R.S.A. § 704-A(2), Maine's long-arm jurisdiction statute, and that this is what they have alleged. Plaintiffs' Memorandum in Opposition to Motion to Dismiss, etc. ("Rule 12(b)(2) Opposition") (Docket No. 74) at 8. The plaintiffs cite *Noonan v. Winston Co.*, 135 F.3d 85, 90 (1st Cir. 1998), for the proposition that "specific jurisdiction exists if the defendant aimed an act at the forum state, knew the act would likely have a devastating effect, and knew the injury would be felt in the forum state."

6

*Id*. at 9 (citation and internal quotation marks omitted). They contend that this is precisely what they have alleged in the amended complaint. *Id*.

The amended complaint, however, does not bear this out. It alleges that Technology Capital is a Maine limited liability company with its principal place of business in Maine, Amended Complaint ¶ 5, and that the moving defendants "knew of the Contract and the Assignment," *id*. ¶ 24, but not that the moving defendants knew that Technology Capital was located in Maine, let alone any fact that would allow the drawing of a reasonable inference to support a conclusion that the moving defendants aimed their alleged tortious actions at Maine, knew that they would have a devastating effect in Maine and knew that the resulting injury would be felt in Maine. The plaintiffs assert that the moving defendants "targeted their tortious conduct at Maine, requiring Qualtech to mail the Termination Letter (via Maine counsel) to Chipco in Maine," Rule 12(b)(2) Opposition at 13, but the only authority cited for this proposition, Exhibit 248 to the Deposition of Gregory Simko, establishes only that Bicycle required confirmation that Qualtech had sent a termination letter to Chipco "to terminate the Agreement in Principle to develop and market RFID gaming chips and tables with Chipco International dated 1/18/05," letter dated December 22, 2005 from Bicycle Corporation to Christian Richard, Exh. 248 (included in Exh. A to Rule 12(b)(2) Opposition), at 2. This is not sufficient to allow the inference that any of the moving defendants, including Bicycle, aimed its alleged tortious activity at Maine. In *Accessories Ltd. of Me., Inc. v. Longchamp U.S.A.*, 170 F.Supp.2d 12 (D. Me. 2001), this court held, in the context of an allegation of wrongful interference with a business relationship, that knowledge that the plaintiff's principal place of business was in Maine was insufficient to demonstrate that the alleged tortious conduct was expressly aimed at Maine, as required to establish personal jurisdiction in this court. *Id*. at 15. The plaintiffs attempt to distinguish *Accessories* by pointing out that the

7

moving defendants "did much more than send letters into Maine," Rule 12(b)(2) Opposition at 13,[3] but, as noted above, the evidence of the additional activity they specify does not allow the drawing of a reasonable inference that the alleged tortious activity was expressly aimed at Maine.

Because the plaintiffs have failed to establish the "relatedness" prong of the test for the exercise of specific personal jurisdiction, it is not necessary to consider in this regard whether they have shown that the moving defendants' contacts with Maine constituted purposeful availment of the benefits and protections of Maine's laws or whether the exercise of personal jurisdiction would be fundamentally fair under the so-called "Gestalt factors." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 620-21 (1st Cir. 2001). I will accordingly proceed to consider the plaintiffs' contention that this court may exercise general personal jurisdiction over the moving defendants.

Here, the moving defendants assert that none of them has engaged in substantial or systematic and continuous activity, unrelated to the alleged tortious activity, in Maine, making the exercise of general personal jurisdiction impossible, citing *Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005). Rule 12(b)(2) Motion at 13. In a one-paragraph argument, the plaintiffs respond that there is sufficient evidence to establish a basis for the exercise of general jurisdiction over USPC and Jarden. They request that this court "defer its ruling" on this issue, should it "be inclined to conclude" that it does not have personal jurisdiction over the moving defendants on the showing made, until the plaintiffs have had "a reasonable opportunity to conduct jurisdictional discovery." Rule 12(b)(6) Opposition at 18. They assert that "Bicycle brand playing cards and other gaming products are ubiquitous in Maine," *id.*, but fail to mention IPCC at all in this portion of their memorandum of law.

---

[3] The plaintiff in *Accessories* "concede[d] that the cease and desist letter [the defendant] sent to Accessories directly in Maine is not enough to support a Maine court's exercise of personal jurisdiction over [the defendant]." 170 F.Supp.2d at 15.

Because the plaintiffs have failed to demonstrate a basis for the exercise of either specific or general personal jurisdiction over IPCC,[4] it is entitled to dismissal of the claims against it.

Assuming that the plaintiffs' mention of the three remaining moving defendants in their minimal argument is sufficient to preserve their opposition to this portion of the motion to dismiss, *but see Graham v. United States,* 753 F. Supp. 994, 1000 (D. Me. 1990) (issues mentioned in perfunctory manner, unaccompanied by effort at developed argumentation, deemed waived), the plaintiffs refer specifically only to "sales in Maine since 2004 in excess of $500,000.00" by USPC and sales by Jarden of "myriad products in Maine under recognized brand names such as Coleman, Holmes, Oster, Sunbeam, Mr. Coffee, Rival and First Alert." Rule 12(b)(2) Opposition at 18. In support of these factual assertions, the plaintiffs provide citations to an exhibit to the declaration of Kevin Crawford, filed with the Rule 12(b)(2) motion, and the entire declaration of Angela Stewart, filed with the opposition. *Id*.

> With respect to a claim of general jurisdiction, the First Circuit has noted that the standard for evaluating the question whether contacts by a defendant with the forum state satisfy the constitutional test for general personal jurisdiction is considerably more stringent than the standard applied to claims of specific personal jurisdiction.

*Danton v. Innovative Gaming Corp. of Am.*, 246 F.Supp.2d 64, 69 (D. Me. 2003) (citation and internal quotation marks omitted). In *Noonan*, the First Circuit held that orders in the amount of $585,000, together with the solicitation of business in the forum state over a period of eighteen months, were not sufficient to allow the exercise of general personal jurisdiction. 135 F.3d at 92-94. Here, the plaintiffs offer even less with respect to USPC. On the showing made, USPC is entitled to dismissal.

---

[4] In order to be entitled to jurisdictional discovery, a plaintiff must present a colorable claim of jurisdiction and "facts . . . which show why jurisdiction would be found if discovery were permitted." *Swiss Am. Bank*, 274 F.3d at 626. A failure to even mention IPCC cannot constitute such a showing. The plaintiffs are not entitled to jurisdictional discovery as to IPCC.

As to Jarden and Bicycle, the moving defendants contend that their status as parent corporations for IPCC is not sufficient to establish general jurisdiction. Rule 12(b)(2) Motion at 17. They assert that Jarden and Bicycle "have absolutely no contacts with the state of Maine." *Id*. They provide evidence that Jarden is the parent corporation of Bicycle, which in turn is the parent of United States Playing Card Holding Company, which in turn is the parent of USPC. Declaration of John Capps (Attachment 3 to Rule 12(b)(2) Motion) ¶ 13. The plaintiffs offer as contrary evidence only the declaration of Ms. Stewart. That declaration establishes that Stewart bought Bicycle and Bee brand playing cards and poker chips in Maine, Declaration of Angela L. Stewart (Exh. E to Rule 12(b)(2) Opposition) ("Stewart Decl.") ¶ 2, but not that such brands are manufactured by Bicycle Holding, Inc., the defendant in this case, or that this defendant should be bound by the contacts with Maine established by the manufacturer of such items. The assumption necessary to cross that gap goes well beyond the indulgent reading of the complaint that is required in connection with the consideration of a motion to dismiss. Bicycle is accordingly entitled to dismissal.

The question is closer with respect to Jarden. "Ordinarily, courts respect the legal independence of a corporation and its subsidiary when determining if a court's jurisdiction over the offspring begets jurisdiction over the parent." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1091 (1st Cir. 1992). The presumption of corporate separateness "may be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." *Id*. (citation and internal punctuation omitted). *See also Heller v. Allied Textile Cos., Ltd.*, 276 F.Supp.2d 175, 184-85 (D. Me. 2003). The plaintiffs here offer no such evidence. The Stewart declaration offers Jarden's 2005 annual report as evidence that "Jarden sells products under recognized brand[] names including, without limitation, Coleman, Holmes, Oster, Sunbeam, Mr. Coffee, Rival, and First Alert." Stewart Decl. ¶ 9. It is not at all clear from that report that each of

10

these brands is in fact manufactured by a separate subsidiary rather than by Jarden itself. However, it is also not clear that Jarden itself does manufacture, sell or distribute these products. That question is put to rest by the second declaration of John Capps, which states that Jarden "does not manufacture, sell or distribute products to retailers or consumers." Declaration of John Capps (Exh. 2 to Reply Memorandum of Law in Support of Motion to Dismiss for Lack of Personal Jurisdiction, etc. (Docket No. 81)) ¶ 3. On the showing made, Jarden is also entitled to dismissal under Rule 12)(b)(2).

The plaintiffs' request for jurisdictional discovery, Rule 12(b)(2) Opposition at 18, fails with respect to USPC, Bicycle and Jarden for the same reason it failed with respect to IPCC. The plaintiffs offer only the assertion that Bicycle and Jarden products are "ubiquitous in Maine." *Id*. Absent some suggestion that Jarden in fact controls the activities of the subsidiaries that sell what the plaintiffs term "Jarden products" and that the Bicycle products to which the plaintiffs refer are actually produced and sold by Bicycle Holding, Inc., the defendant in this case, the plaintiffs have not met the test of *Swiss American Bank*; they have not identified facts that "show why [general personal] jurisdiction would be found if discovery were permitted." 274 F.3d at 626. With respect to specific personal jurisdiction, the plaintiffs' conclusory assertion that "[f]urther discovery may also reveal additional contacts related to the events at issue in this lawsuit that support Technology Capital's argument for specific jurisdiction," Rule 12(b)(2) Opposition at 18, is similarly insufficient.

My conclusion that the moving defendants are entitled to dismissal for lack of personal jurisdiction in this court makes it unnecessary to consider the moving defendants' alternate argument, Rule 12(b)(2) Motion at 18-19, that venue in this court is improper.

## II. The Rule 12(b)(6) Motion

If the court adopts my recommendation to grant the motion to dismiss for lack of personal jurisdiction brought by the same defendants who bring the motion to dismiss for failure to state a claim

on which relief may be granted, there will be no need to address the latter motion.[5] Accordingly, I recommend that the Rule 12(b)(6) motion be deemed moot.

### III.  Conclusion

For the foregoing reasons, I recommend that the motion to dismiss for lack of personal jurisdiction filed by defendants Jarden Corporation, Bicycle Holding, Inc., The United States Playing Card Company and International Playing Card Company, Ltd. (Docket No. 63) be **GRANTED** and that the motion to dismiss for failure to state a claim on which relief may be granted filed by the same defendants (Docket No. 75) be declared **MOOT**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 15th day of February, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

[5] The plaintiffs' Motion for Leave to File Surreply Memorandum in Opposition to Second Motion to Dismiss (Docket No. 87) will also be rendered moot.